UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>    Plaintiff,<br><br>  v.<br><br>PARALEGAL LEEFLANG,<br>ROBBERT WHEILER, WARDEN<br>RICHARDSON, D.W. MARTINEZ,<br>CAPTAIN HUST, LT. GIBNEY, A.<br>HOTTINGER, and LT SEGADELLI,<br><br>        Defendants. | Case No. 1:22-cv-00052-DCN<br><br>**INITIAL REVIEW ORDER<br>BY SCREENING JUDGE** |

The Amended Complaint of Plaintiff Kent Williams was conditionally filed by the Clerk of Court due to his status as a prisoner and pauper. Dkts. 1, 10. A "conditional filing" means that Plaintiff must obtain authorization from the Court to proceed. After reviewing the Complaint, the Court has determined that Plaintiff cannot proceed on his claims for the following reasons: (1) there is no legal basis for his claim that he is entitled to have his legal mail delivered in a manner other than the prison's general institutional mail delivery system; (2) he has stated no actual injury arising from the alleged incidents where his legal papers were lost or delayed; (3) Plaintiff's claim that he was denied copies has no causal connection to Defendants because Plaintiff appears to be refusing to use the existing prison copy service; and (4) Plaintiff's retaliation claim is too vague to be actionable. Plaintiff will be given leave to file an amended complaint. Because he has stated no cause of action upon which he can proceed, and because the Court is already monitoring his health and

wellbeing in another open case, his requests for temporary and preliminary injunction relief will be denied.

## PLAINTIFF'S MOTION FOR REASSIGNMENT OF CASE

Plaintiff requests that this Court recuse itself (Dkt. 16), because it is presiding over another of Petitioner's cases, *Williams v. Fox*, 1:16-cv-000143-DCN ("Case 143"), and Plaintiff perceives the Court's rulings in that case as anti-prisoner and pro-law enforcement. Plaintiff filed a motion for recusal in that case, as well, which the Court denied. *See* Dkt. 193 in Case 143.

### 1. Review of Affidavit to Determine Whether a Basis Exists to Reassign the Recusal Motion to another Judge

A motion for recusal or disqualification of an allegedly biased judge must be timely and must show bias. *See* 28 U.S.C. §§ 144, 455. The party seeking disqualification must file a "sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. Such affidavit must "state the facts and the reasons for the belief that bias or prejudice exists" and must be made in good faith. *Id*.

If a § 144 affidavit is legally sufficient, then a judge is obligated to reassign the motion to another judge. *Toth v. Trans World Airlines, Inc*., 862 F.2d 1381, 1388 (9th Cir. 1988). An affidavit lacks a sufficient legal basis where "the alleged bias or prejudice did not arise from an extrajudicial source." *Id*. at 1387. In other words, if the alleged bias arose from conduct during a judicial proceeding, the affidavit is legally insufficient. *Id*. at 1387–88.

Here, Plaintiff has filed a verified motion, which the Court will construe as an affidavit. The motion identifies the alleged biases as arising from Case 143. Accordingly, the motion is insufficiently supported, and reassignment to another judge is unnecessary.

### 2. Review of Recusal Motion

Disqualification is not required where vague allegations of bias and prejudice are asserted and where they arise from the adjudication of claims or cases by the court. Such alleged errors are "the basis for appeal, not recusal." *In re Focus Media, Inc*., 378 F.3d 916, 930 (9th Cir. 2004) (internal citation omitted), *superseded by bankruptcy statute on other grounds*.

In his motion, Plaintiff cites his disagreement with the Court's decisions in Case 143. Plaintiff complains that the Court is "intentionally disregarding the law." Dkt. 16, p. 5. Because Plaintiff is citing the Court's decisions and orders made in Case 143 as the basis for the Court's alleged bias, the request for disqualification or recusal fails.

The only exception that would require recusal based only on court rulings is when a court's substantive rulings were products of deep-seated favoritism or antagonism that made fair judgment impossible. *In re Focus Media*, 378 F.3d at 930 (internal citation and punctuation omitted). *See Liteky v. United States*, 510 U.S. 540, 555 (1994)) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (emphasis in original)). The United States Supreme Court noted

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

that this exception is to be applied "only in the rarest of circumstances when no extrajudicial source is involved." *Id.* at 555 (1994) (internal citation omitted).

Plaintiff has not pointed to any substantive rulings in Case 143 that meets this standard. The law governing the substance of the claims in that case is unsettled, and the Court has made many efforts to invite the parties to brief the law in that case and help craft jury instructions for a fact pattern that is unlike any existing case law.

Also in Case 143, the Court has made efforts to aid Plaintiff in his quest to conduct a jury trial pro se. The Court has made available court funding for investigation of witness addresses and subpoena fees—something that is not a national standard and is not legally required. When Plaintiff threatened suicide again and was placed on suicide watch a second time, the Court granted him yet another continuance of the trial in Case 143. That decision required the Court to issue orders quashing subpoenas—at great inconvenience to witnesses and the Court. Defendants had to endure yet another continuance, and yet the Court deemed it important to ensure that Plaintiff was given an adequate chance to prepare for and represent himself at trial. The Court has also been indulgent with Plaintiff's complaints about urgent copying needs as it relates to trial—arranging for court personnel to copy Plaintiff's trial exhibits because of his suspicion that it could not be done at the prison without loss. The Court also ordered prison officials to hand-deliver time-sensitive documents to Plaintiff for pretrial purposes.

Plaintiff admits that the Court's alleged bias is "likely not personal, per se, it's Plaintiff['s] prisoner litigator status that is offensive to the court." Dkt. 16, p. 6. The record in Case 143 does not reflect that the Court holds a deep-seated bias against Plaintiff or

prisoners in general. Rather, it shows that the Court is attempting to clarify whether or how an extension of the law should be applied to novel facts and that the Court has made many accommodations to help Plaintiff be able to litigate his case.

Plaintiff also alleges that General Order 342, signed by this Court, "establishes inherent bias." Dkt. 16, p. 5. General Order 342 applies to all non-habeas pro se prisoner civil filings in the District of Idaho, and the judges in the district found the General Order "necessary and appropriate to implement new prisoner filing procedures to increase the efficiency and effectiveness of the limited public resources allocated to managing and adjudicating prisoner civil rights cases." General Order 342, p. 1. The Order sets forth pleading requirements, page limitations, and pleading exhibit limitations; it also provides for a prisoner e-filing system.

General Order 342 further implements procedures designed to "level the playing field" for pro se prisoner litigants. For example, it provides, in part: "A standard disclosure and discovery order issued in each case will apply in all pro se prisoner non-habeas civil cases. The standard order is designed to make prisoner litigation more disclosure-oriented and less discovery-oriented, based on the Court's experience that … defendants in prisoner lawsuits tend to hold a disproportionate share of the information and items relevant to a lawsuit." *Id*., p. 4. The standard disclosure and discovery order was created after a conference with input from local prisoner plaintiffs' attorneys, defense attorneys, and court staff.

Plaintiff has not specified how General Order 342 shows that the Court is biased against prisoners. Therefore, the Court rejects this allegation as a basis for recusal in this

INITIAL REVIEW ORDER BY SCREENING JUDGE - 5

case.

For the foregoing reasons, the Court concludes that Plaintiff has failed to show conduct sufficient to raise a question about the Court's ability to impartially preside over Plaintiff's case. For all of these reasons, the motion for recusal will be denied.

## STANDARD OF LAW FOR SCREENING

Under modern pleading standards, Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal*/*Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A plaintiff must provide sufficient factual allegations to show that there is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting Twombly, 550 U.S. at 557).

In addition, the Prison Litigation Reform Act (PLRA)[1] requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before such complaints are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that are frivolous or

---

[1] Pub. L. No. 104-134, 110 Stat. 1321 (1996), *as amended*, 42 U.S.C. § 1997e, *et seq.*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

The Court liberally construes a plaintiff's pleadings to determine whether the case should be dismissed for lack of a cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory, under the *Iqbal*/*Twombly* standard.

The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989). Rule 12(b)(6) authority to dismiss claims as explained in *Jackson* was expanded by the PLRA, giving courts power to dismiss deficient claims sua sponte, either before or after opportunity to amend as explained in *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is an implementing statute that makes it possible to bring a cause of action under the Amendments of the United States Constitution.

## REVIEW OF COMPLAINT

### 1. Access to Courts Claim

#### A. *Standard of Law*

An inmate has a First and Fourteenth Amendment right to access the courts, *Bounds v. Smith*, 430 U.S. 817, 817, 821, 828 (1977), and may recover for denial of that right in a civil rights lawsuit upon a demonstration that an *actual injury* occurred as a result of the

denial, *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). *Bounds* "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356 (1996).

It is important to understand that there is no cognizable "access to courts" claim unless the defendants' actions caused an actual injury to an underlying claim of the plaintiff in a planned or existing court action. In *Avalos v. Baca*, 596 F.3d 583, 591 (9th Cir. 2010), the United States Court of Appeals for the Ninth Circuit explained that the "actual injury" requirement is "consistent with the Supreme Court's position in *Christopher v. Harbury*, 536 U.S. 403 (2002), commenting that a claim of access to the courts is ancillary to the underlying claim." In *Christopher*, the Supreme Court explained what "ancillary" means in an access-to-courts setting:

> While the circumstances thus vary, the ultimate justification for recognizing each kind of claim is the same. Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective indication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.

*Id*. at 414–15.

The "actual injury" element of an access-to-courts claim is necessary to state a claim, and it can be shown in several ways. *Lewis*, 518 U.S. at 350–51. Importantly, however, "an inmate cannot establish relevant actual injury simply by establishing that his

prison's law library or legal assistance program is subpar in some theoretical sense." *Id*. at 351. The prisoner must "go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id*.

After *Lewis*, the United States Supreme Court clarified what "hindered" means in the context of an "access to courts" claim. To allege an injury that affected the right to access the courts, a plaintiff must (1) adequately describe the claim that was hindered and (2) allege facts that show it was actually hindered. *Christopher*, 536 U.S. at, 415. "Hindered claims" can be "forward-looking" claims (those for which an impediment must be removed to permit the plaintiff to proceed with a still-viable claim) or "backward-looking" claims (those now impossible to file, like a statute of limitations issue). *Id*. at 413-14.

To state an access to courts claim when a prisoner alleges he suffered the loss of a suit that cannot now be brought, the prisoner must allege facts supporting three elements: (1) official acts that frustrated the inmate's litigation; (2) loss of a "nonfrivolous" or "arguable" underlying claim that is set forth in the Complaint, including the level of detail necessary "as if it were being independently pursued"; and (3) specific allegations showing that remedy sought in the access-to-courts claim is not otherwise available in another type of suit that could be brought. *Id*. at 415–17.

Further, the constitutional question is not governed by a prison's own access-to-courts procedures. As long as minimum constitutional requirements are met, a prison need not comply with its "own, more generous procedures." *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *see also Huron Valley Hosp. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989)

("[Section 1983] is thus limited to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law.") (relying on *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

## B. *Factual Allegations and Discussion*

Plaintiff asserts that Defendants are violating his First and Fourteenth Amendment rights to access the court and access his attorney[1] as a result of the IMSI paralegal's refusal to provide legal copy and e-file service, and her supervisor's refusal to correct the problem. Dkt. 10. However, as described later in his Complaint, the problem is not that Defendants refuse to provide copy and e-filing services to Plaintiff, it is that Plaintiff refuses to use the current copy and e-file service made available by the prison. Prisoners are required to submit their pleadings and papers to the prison paralegal to be e-filed with the state and federal courts. Afterwards, the original pleadings and papers are returned to the prisoner litigants via institutional mail. Plaintiff believes that the federal Constitution requires that, after e-filing is completed, the prison paralegal must hand-deliver the original pleadings and papers to the prisoners to avoid having the documents given to the wrong person or being delayed or lost in the general prisoner mail delivery system.

Petitioner asserts that the manner in which the paralegal chooses to handle legal documents "is so unreliable, with a very real chance the documents will be 'lost' or first given to another inmate, that it is unusable and *is a qualified refusal*." Dkt. 10, p. 2

---

[1] Plaintiff does not explain the "who, what, why, when, where, and how" showing that Defendants caused him to be unable to "access his attorney." If a prisoner is represented by counsel, he does not need to e-file or conduct other access-to-courts tasks. Plaintiff must either clarify the legal and factual basis of this claim or omit it from a second amended complaint.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

(emphasis added). There is no legal support for this premise. Plaintiff has not alleged that any original document was not electronically transmitted to the state or federal court for filing; his case concerns how he received his original pleading or paper back after e-filing.

Plaintiff alleges that prison policy provides that only legal staff can handle inmates' legal documents during processing, but any prison staff can handle the return after processing. Plaintiff asserts that "the policy is so unreliable, irresponsible, and risky that the Director's office issued a policy (405.02.01.001 #6) to protect against such practice and to protect the inmates' legal documents and access to courts rights." *Id*. However, a prisoner cannot base a civil rights claim upon prison policies that are more protective than the federal Constitution.

Plaintiff desires an injunction prohibiting the prison paralegal from returning e-filed original documents to prisoners via institutional mail. He asserts that every document should be hand-delivered by the paralegal instead. From time to time, the prison paralegal has delivered Plaintiff's legal documents in person, but Plaintiff alleges that, out of vindictiveness, her supervisor, Mr. Wheiler, required her to stop. There is no federal right to hand-delivery from specific prison personnel as to legal mail or any other type of mail. Supervisors may change prison procedures at any time, and, unless the change violates the federal Constitution, the change cannot serve as the basis for a federal civil rights claim.

Plaintiff complains of the following incidents, all of which fall short of the "actual injury" in an "ancillary claim" that must be pleaded with the level of detail necessary "as if it were being independently pursued," *see Christopher*, 536 U.S. at 415-17:

- In 2017, a stack of irreplaceable documents was sent through institutional mail. They were given to another inmate and lost for ten days and then retrieved. Plaintiff lived in Cell 8, and the correctional officer misread the "8" and left the document in Cell 6. This claim is beyond the statute of limitations deadline and specifies no actual injury.

- In a different prison, ISCC, in 2017 or 2018, two documents he had given to the prison paralegal for filing failed to make it back to him. This claim is beyond the statute of limitations deadline and specifies no actual injury.

- When he was transferred to IMSI in January 2021, a big box of forwarded legal mail got lost at IMSI. Prison personnel conceded it was lost. There are no allegations of an actual injury arising from this incident.

- In June 2021, when Plaintiff was temporarily in B-unit segregation, Defendant Wheiler came by to pick up court documents for copying. The same day, Plaintiff was transferred to the medical unit. About a week later, Plaintiff asked Wheiler to give the documents back to him. The documents had been sent to B-unit via institutional mail, and were lost. Wheiler asked the court to provide copies, and the court did so. There are no allegations of an actual injury arising from this incident.

- Also in June 2021, Wheiler forwarded a package of papers via institutional mail to Plaintiff in the medical unit. Ten days later, after Plaintiff moved to

a different cell, Plaintiff saw the package in an officer desk. The package was provided to Plaintiff. There are no allegations of an actual injury arising from this incident.

- In January 2022, Plaintiff gave some legal documents to Defendant Leeflang for e-filing and she said that she could not guarantee that he would get the copies back in the institutional mail; therefore, she would make copies to keep in her office before placing them in the mail. *Id.*, pp. 9-10. There are no allegations of an actual injury arising from this incident.

- In Plaintiff's own words, "[s]ince the initial complaint, I have had to mail a considerable amount of documents concerning my post-conviction appeals to the state supreme court and district court without having a copy for himself or to serve on respondents. Including a rule 60(B) addendum, notice of appeal, continual ongoing litigation." *Id.*, p. 10. It is unclear why Plaintiff did not obtain these copies. Plaintiff will need to specify in any amended complaint the "who, what, why, when, where, and how" of the lack of copies incident(s) and clarify whether he does not have a copy because he refused to use the e-filing service, or for another reason. He must also state an actual injury arising from his lack of copies.

*See* Dkt. 10, Amended Complaint.

In any amended complaint, Plaintiff must omit those claims that do not have an arguable legal and factual basis. Plaintiff alleges that he has a federal right to a safe,

reliable, effective, and confidential copy service at the prison. *Id*., p. 7. He believes that if prison officials act in a manner that chills, impedes, or frustrates his access to the courts, it violates the law. He is mistaken on both grounds to the extent that he believes he has a stand-alone-claim without alleging the elements of a underlying claim that was impaired, as set forth above. Each access claim must show that he planned to file a pleading or paper in an underlying action but a defendant personally prevented him from doing do. Each underlying action must be pleaded so as to show he had facts to support the elements of whatever type of claim he was trying to assert, facts showing the claim was not frivolous, and facts showing why he cannot now pursue the claim or obtain a remedy for the claim in another action.

When Plaintiff asserts that his access to courts rights have been "chilled," he is mixing up the access-to-courts standard of law with the retaliation standard. In any amended complaint, Plaintiff must take care to use only elements that related to the particular cause of action he desires to bring; not all First Amendment causes of action have the same elements or standards.

Each of Plaintiff's claims must show a causal link between a defendant's action and his actual injury (harm done to an underlying case, explained in enough detail that would support it as an independent lawsuit). There is no right to have pleadings and papers that have been e-filed by prison paralegals personally delivered to an inmate litigant by the prison paralegals, as he insists. His insistence is such that he has refused the access to courts services available to him. Therefore, it seems that the "cause" of Plaintiff's inability or non-desire to file litigation because of his fear of losing the original pleading or paper is

Plaintiff himself, not Defendants.

Finally, there is no law prohibiting a prison paralegal from keeping copies of pleadings and papers in the prison legal resource center office to guard against the loss of sending e-filed papers through the prisoner mail system. Once a litigant places pleadings and papers into the hands of the prison paralegal with instructions that they be e-filed, they are public records.

### 2. Retaliation Claim

#### A. Standard of Law

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim, *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

Plaintiff alleges he attempted to resolve this "problem"—his insistence that his e-filing originals be hand-delivered to him by the paralegal—with Lieutenant Segadelli, but Segadelli threatened him with, in Plaintiff's own words, "alternative means of punishment on Plaintiff if he continues to use the grievance process, continues to try to collect evidence in support of this suit." *Id*., p. 2 [verbatim]. Plaintiff states that "[t]he understood

implications of the alternative form of punishment is torture: starvation, sexual assault, beatings, very cold strip cells and possibly death." *Id*.

These statements are too vague to be actionable. Plaintiff must explain what "understood implications" means. It appears that "starvation, sexual assault, beatings, very cold strip cells and possibly death" were not mentioned by Segadelli, and, therefore, Plaintiff must state how these threats were "understood" and "implicated." Plaintiff has been placed on suicide watch several times for threatening to kill himself. He has voluntarily gone on a hunger strike before.  Here, he seems to be mixing up what is caused and perceived by only him and what is caused by others when he derives inferences from conversations. He must clearly state the "who, what, why, when, where, and how" of this incident in any amended complaint.

Plaintiff also vaguely states that he was "attempting to … collect evidence" for the present litigation. He must clearly state the "who, what, why, when, where, and how" of his attempts to collect evidence. He must describe his conversations with Segadelli that demonstrate that Segadelli was retaliating against him for "attempting to collect evidence."

Plaintiff also vaguely alleges that Segadelli warned or threatened him to deter him from using the prison grievance process. Plaintiff must state the "who, what, why, when, where, and how" of these warnings or threats, including how Segadelli was aware of the grievances Plaintiff wanted to file, and what the conversations were that demonstrate retaliation.

If Plaintiff does not have adequate factual allegations to support the elements of a retaliation claim, he should not include a retaliation claim in a second amended complaint.

**3.  General Instructions for Amendment**

For each cause of action against each defendant, Plaintiff must state the following—organized in separate sections for *each defendant*: (1) the name of the person or entity that caused the alleged deprivation of his constitutional rights; (2) facts showing the defendant is a state actor or a private actor performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the particular constitutional provision Plaintiff alleges has been violated; (5) the specific conduct or action Plaintiff alleges is unconstitutional, including facts alleging that the elements of the constitutional violation are met; (6) the injury or damages Plaintiff personally suffered; and (7) the particular type of relief he is seeking from each defendant.

After Plaintiff follows this pattern for the first defendant and the first cause of action against that defendant, he shall repeat the pattern for each additional cause of action against the first defendant. Plaintiff will not be permitted to assert more than one constitutional provision as a basis for a claim in a cause of action. Each constitutional cause of action is different, with different elements to meet. Each such claim must be separated into a different cause of action.

After Plaintiff finishes all the causes of action against the first defendants, he shall proceed to follow this pattern for each additional defendant.

Any amended complaint must contain all of Plaintiff's allegations in a single pleading, and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed

amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc).

If Plaintiff files a second amended complaint, he must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 30 days, or if the amendment does not comply with Rule 8, this case may be dismissed with prejudice without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## PLAINTIFF'S REQUESTS FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

### 1. Standards of Law

Issuance of a temporary restraining order or preliminary injunction is appropriate where a plaintiff can show that (1) there are "serious questions going to the merits," (2) there is a "a balance of hardships that tips sharply towards the plaintiff," (3) "there is a likelihood of irreparable injury," and (4) "the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A request can be granted only if "the facts and law clearly favor the moving party." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994).

In addition, in the prison context, the Prison Litigation Reform Act (PLRA) provides

that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Further, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.*; *accord Nelson v. Campbell*, 541 U.S. 637, 650 (2004) ("The Prison Litigation Reform Act of 1995 (Act) imposes limits on the scope and duration of preliminary and permanent injunctive relief, including a requirement that, before issuing such relief, '[a] court shall give substantial weight to any adverse impact on ... the operation of a criminal justice system caused by the relief.'") (quoting 18 U.S.C. § 3626(a)(1)).

In *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172 (3d Cir. 1990), the court identified the methodology for considering such requests:

> The applicable Federal Rule does not make a hearing a prerequisite for ruling on a preliminary injunction. See Fed. R. Civ. P. 65(a). Obviously, a hearing would not be necessary if the movant is proceeding on a legal theory which cannot be sustained, because then there could be no showing of a likelihood of success on the merits. We have also held that a decision may be based on affidavits and other documentary evidence if the facts are undisputed and the relevant factual issues are resolved. *See Williams v. Curtiss–Wright Corp.*, 681 F.2d 161, 163 (3d Cir. 1982) (per curiam). Moreover, a district court is not obliged to hold a hearing when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm.

*Id.* at 1175–76.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 19

### 2.  Factual Allegations and Discussion

Plaintiff has filed a "Motion that the Court Immediately Rule on Plaintiffs 42 USC 1983 Emergency Injunction." Dkt. 8. It requests no relief other than that the Court rule on his accompanying Motion for Emergency Injunction.

Plaintiff's "Motion for Emergency Injunction" (Dkt. 11) requests the following immediate relief: (1) prevent Defendants from making copies of his documents submitted for e-filing or photocopying; (2) order Defendants to provide Plaintiff with a different and more reliable copy and e-file service; (3) prevent Plaintiff from being harmed or retaliated against by Defendants and monitor his welfare. After Plaintiff filed his motion, he appeared in Court several times in Case 143, and he has continued to file numerous motions, none of which show that his filing ability has been impaired. In another of Plaintiff's cases, a United States Magistrate Judge carefully and thoroughly reviewed Plaintiff's allegations that IDOC officials had placed him in harm's way; those allegations were unfounded. *See* Case No. 1:20-cv-00008-REP, *Williams v. McKay* ("Case 008"). In addition, Plaintiff recently has threatened suicide again, and the Court has required IDOC officials to send monthly reports of his mental and physical wellbeing to the Court in Case 143. Nothing in the reports shows that he is in danger of physical harm by IDOC officials. Because Plaintiff has not stated a cause of action in the Amended Complaint upon which he can proceed, and because the Court's probing and monitoring of Plaintiff's mental and emotional health has occurred and is occurring in Cases 008 and 143, this motion will be denied.

Plaintiff has filed an "Emergency Motion for a Ruling on Plaintiff's Filed Motion for Emergency Injunctive Relief." Dkt. 23. It requests a ruling on his prior motion. With the ruling on the prior motion, this motion will be granted, but only to the extent that the Court has issued a ruling, though not in Plaintiff's favor.

## ORDER

1. Plaintiff's Motion For Reassignment of Case (recusal) (Dkt. 16) is DENIED.

2. Plaintiff's Motion to Amend (Dkt. 9) is GRANTED. Plaintiff is not authorized to proceed on his Amended Complaint (Dkt. 10).

3. Plaintiff must file a second amended complaint or a notice of voluntary dismissal within 30 days after entry of this Order.

4. Plaintiff's "Motion that the Court Immediately Rule on Plaintiffs 42 USC 1983 Emergency Injunction" (Dkt. 8) is DENIED.

5. Plaintiff's "Motion for Emergency Injunction" (Dkt. 11) is DENIED.

6. Plaintiff's Motion for Copy of Record for Appeal (Dkt. 18) is DENIED as MOOT.

7. Plaintiff's Motion for Copies of Plaintiff's Court Filings of this Case (Dkt. 22) is GRANTED. The Clerk of Court shall provide Plaintiff a copy of the Docket Nos. 7-13 and 16 only. Hereinafter, Plaintiff is required to use the prison's copy services, even if prison officials keep a copy of his documents for their files or if Plaintiff suspects other wrongdoing; he may not refuse the services for any reason and may not request that the Court send him copies instead.

8.  Plaintiff's "Emergency Motion for a Ruling on Plaintiff's Filed Motion for
    Emergency Injunctive Relief" (Dkt. 23) is GRANTED, only to the extent
    that the Court has issued a ruling.

DATED: July 22, 2022

David C. Nye
Chief U.S. District Court Judge